WILLIAM HENNESSEY *vs.* THOMAS F. MEEHAN.

APRIL 20, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J.   This is a probate appeal from a decree of the probate court of the city of Providence appointing the appellee administrator *d. b. n.* of the estate of Bridget Hennessey.   The case has been certified to us by the superior court upon an agreed statement of facts under general laws, 1923, chapter 348, sec. 4.

Bridget Hennessey died intestate and without issue in 1912, leaving as part of her estate a deposit of $600 in her name in the People's Savings Bank in Providence. Her husband, James Hennessey, who was appointed administrator, died in 1917 without having reduced this bank deposit to possession.   It still stands in the name of Bridget Hennessey and is the only known asset of her estate left to be administered.   We assume that there are no outstanding claims against the estate, for none are mentioned in the agreed statement of facts.

In March 1935, the appellee, a nephew of Bridget Hennessey, petitioned the probate court for appointment as administrator *d. b. n.* of her estate.   His appointment was opposed by the appellant, who claimed for himself the right to such appointment as one of the children of James Hennessey by a prior marriage, on the ground that the full beneficial interest in the bank deposit passed to the children of James Hennessey upon his death and not to the next of kin of Bridget Hennessey.   The probate court appointed the appellee, whereupon the appellant brought his case to the superior court, which certified the following questions for our determination: "First: Did the said James Hennessey in his lifetime have the right to reduce said bank de-

posit to his own possession as administrator of his wife's estate? Second: Did the beneficial interest in said bank deposit pass to the next of kin of the said James Hennessey upon his death, even though he had not reduced said bank account to possession during his lifetime, or are the next of kin of Bridget Hennessey entitled to said deposit? Third: If the next of kin of said James Hennessey are alone beneficially interested in said bank account, was the appointment of the said Thomas F. Meehan as administrator *d. b. n.* of the estate of the said Bridget Hennessey proper?"

At common law, if a wife died intestate, the husband had the right to administer her estate and to keep to his own use the surplus of her personal property remaining after the payment of her debts, whether or not he had reduced such property to possession during her life. If he died before he had fully reduced such property to possession, an administrator *d. b. n.* of the wife's estate held that property in trust for the husband's next of kin or legal representative. 2 Kent's Commentaries, 163; Schouler on Ex. & Adm., Vol. 2, (5th ed.) 1081; 13 R. C. L. 1058-9; *In re Grattan's Estate,* 78 A. (N. J.) 813; *Weeks* v. *Jewett,* 45 N. H. 540; *In re Harvey,* 3 Redfield (N. Y.) 214. These rules of the common law were affirmed by the statute of 29 Car. II, chap. 3, § 25, (1676); Chitty's English Statute, Vol. 4 (6th ed.) p. 569.

This is our conception of the common law of England when the American colonies were settled. But the common law of the several states of the United States is not uniformly identical therewith. The statute of 29 Car. II above cited was practically reenacted in this state in language consistent with our new form of government by Laws of Rhode Island 1798, p. 297, sec. 13, providing as follows: "And be it further enacted, that the husband shall be entitled to the administration of his wife's personal estate and shall not be compelled to distribute the same amongst her next of kin, but shall *have* and *retain* the surplus thereof,

after payment of her debts, to his own use, anything in this act to the contrary notwithstanding." (Italics ours.)

Except for minor variations in language, the statute remained practically the same until the word *have* was eliminated from the statute by sec. 824 of the Court and Practice Act, which was passed in 1905 for the purpose of changing our judicial structure and of revising the former practice in the probate courts so as to make it adaptable to the new system. The statute in this form was reenacted as sec. 10, chap. 312, G. L. 1909, and governs the issues in the instant case. When James Hennessey died in 1917, therefore, the statute provided that, if the deceased was a married woman, administration should be granted "to her husband, if competent, who shall not be compelled to distribute the surplus of the personal estate, after payment of her debts, but shall be entitled to *retain* the same for his own use." (Italics ours.) The appellee contends that when the legislature changed the wording of the statute from "shall have and retain" the surplus to "shall be entitled to retain" the same, it intended to restrict the right of the husband to the surplus of whatever personal property in his deceased wife's estate that he had actually reduced to possession before his death. The appellant, on the other hand, claims that the amendment was one of form and that the statute was merely a simplified statement of the husband's right at common law.

In support of his contention, the appellee reminds us that the statute was repealed in 1919, and argues from this fact that the legislature first cut down the husband's right in the surplus of his wife's estate in 1905, and then completely deprived him of that right in 1919. This argument is unsound. It is true that sec. 3, chap. 1787, P. L. 1919, in amendment of sec. 10, chap. 312, G. L. 1909, preserves to the husband only the right to be appointed administrator of his intestate wife's estate, if a suitable person and competent, and that this sec. 10, as amended, omits all reference to his right to the surplus of her estate. It is

not true, however, that because of such omission the husband was thereafter denied all right in such surplus. Section 7 of the same act amends sec. 9, chap. 316, G. L. 1909, entitled: "Of descent, distribution, division, and advancement", and provides that the "surplus of any chattels of personal estate of a deceased person, not bequeathed, after the payment of his just debts . . . shall be distributed by order of the probate court which shall have granted administration in the manner following: 'First.—The sum of three thousand dollars from said surplus and one-half of the remainder to the widow or surviving husband forever, if the intestate died without issue.' " What the legislature really did in 1919 was to separate sec. 10, chap. 312, G. L. 1909 into its component elements and to reenact each such element in a restricted form in different and more appropriate sections of our statute.

Before the word *have* was omitted from the statute here involved, this court, in *Kenyon* v. *Saunders*, 18 R. I. 590, (1894) at page 592, construed it as declaratory of the common law. We also find that the appellee in the *Kenyon* case advanced a contention similar to the one made in the case at bar. His contention in that case was that a husband, who was serving a long sentence in prison, was disqualified to appeal from the probate of his wife's will on the theory that his imprisonment incapacitated him from acting as administrator and from taking any of the personal property in her estate if it were found that she died intestate. The court overruled this contention and held that a convict is not deprived of his right of property, and that the husband had such an interest in the personal estate of his wife, if she died intestate, as to entitle him to contest the validity of the will, although he could not administer on her estate. In reaching this conclusion, the opinion, at page 594, reads: "Again, the language of our statute, Pub. Stat. R. I. cap. 184, § 7, not only provides that the husband shall be entitled to administration of the personal estate of his wife, in case of her intestacy, but also that he shall

not be compelled to distribute the same among the next of kin, 'but shall *have* and *retain* the surplus thereof, after payment of her debts, for his own use.' If his right is to depend upon his administration the word *retain* would be sufficient to cover such right; but the provision that he shall *have* the surplus seems to be of broader significance and to imply an intention to cover the case of administration by another." The right which the court then had under consideration was the right of the husband to the surplus of his wife's personal estate under any condition, irrespective of whether he could qualify as administrator and reduce such property to possession.

The case at bar is clearly distinguishable from the *Kenyon* case. There the husband was not the administrator of the wife's estate and, not having the power to reduce her personal estate to possession, he could not "retain" any surplus of that estate to his own use. It is for this reason that the court in that opinion properly gives great weight to the word "have" in the statute. But, in the instant case, the husband was the administrator of his wife's estate. While acting in this capacity, he was constructively in possession of the bank deposit, with the power in him, as administrator, to reduce it to actual possession and to "retain" the money for his own use, if the bank deposit were in fact the surplus of his wife's personal estate. We are not called upon to decide now what might be the effect, under different circumstances, of omitting the word "have" from the statute. In our opinion, James Hennessey's death, which made necessary the appointment of an administrator *d. b. n.* of the wife's estate, did not divest his estate of its right to the bank deposit. The administrator *d. b. n.* will hold that fund in trust for James Hennessey's next of kin or legal representatives.

The appellee also refers us to *Providence County Savings Bank* v. *Vadnais*, 26 R. I. 122, contending that the court there held that, until the surplus of a wife's estate is determined, the husband has no right to any portion of his wife's

personal estate. An examination of the case clearly shows that the construction of that opinion by the appellee is not the decision of the court. All that the *Vadnais* case decides is that a chose in action due the estate of a deceased wife accrues to the husband as administrator of her estate, and that there can be no surplus of that estate, so as to make such surplus liable to attachment for the personal debt of the husband, until the wife's estate is reduced to possession by the administrator and the surplus property established. We fail to see how this decision in any way affects the case now before us.

The probate court is given the power to name an administrator *d. b. n.* by G. L. 1923, chap. 363, sec. 12. This section, which is complete in itself and does not refer to any other statute governing the administration of estates, gives no priority or preference to the next of kin of the deceased, as in the case of original administration. The probate court is free to exercise its judicial discretion in appointing an administrator *d. b. n.,* bearing in mind, however, "that the statute contemplates that the person to be appointed shall be not only competent to perform the duty, but also suitable in view of his situation or relation to the estate." *Emsley* v. *Young,* 19 R. I. 65. As a general rule, the right to the administration of the effects of an intestate follows the property in them. *Johnson* v. *Johnson,* 15 R. I. 109, 110. Because of our conclusion on the main issue at bar and of the peculiar circumstances in the case, the appointment of the appellee, who has no right in the property to be administered, was unsuitable.

Our decision is as follows: (1) James Hennessey in his lifetime did have the right to reduce the bank deposit to his own possession as administrator of his wife's estate. (2) The beneficial interest in the bank deposit did pass to the next of kin of James Hennessey upon his death, even though he had not reduced the bank account to possession during his lifetime. (3) The appointment of Thomas

F. Meehan as administrator *d. b. n.* of the estate of Bridget Hennessey was improper.

The papers in the case, with our decision certified thereon, are ordered sent back to the superior court for further proceedings.

*Charles R. Easton, Charles R. Haslam,* for appellants.
*Hart, Gainer & Carr, Edward G. Carr,* for appellee.