NICKLES, ADMINISTRATOR *v.* WOOD, JUDGE.

255 S. W. 2d 433

Opinion delivered February 23, 1953.

*Rose, Holland & Smith* and *Hardin, Barton & Hardin,* for petitioner.

*Shaw, Jones & Shaw,* for respondent.

WARD, Justice. On August 4, 1952, an automobile being driven by Jennings J. Stein collided with a truck being driven by Will Roy Nickles. As a result of the collision Nickles was killed and Stein [also his wife] was

injured. The collision occurred in Crawford County, but all the parties mentioned were residents of Sebastian County.

With the view, perhaps, to filing suit for damages against the estate of Nickles in Sebastian County, Stein filed a petition in the Probate Court of said County on August 29, 1952, to have one Lawson Cloninger appointed special administrator [under the provisions of the 1949 Probate Code, § 62-2210 *Ark. Stats.*] of the estate of said Nickles "for the purpose of receiving service of summons and defending causes of action, including petitioner's, arising out of said automobile accident." On the same date the petition was granted by a special Probate Judge in the absence of the regular Judge and letters were accordingly issued. No point is made that the special Judge was not qualified to act.

Also on the same day, August 29, 1952, the Steins filed a suit for damages against the special administrator [representing the estate of said Nickles] in the Sebastian County Circuit Court, and on the following day summons was served.

Thereafter, on September 12, 1952, the father of Will Roy Nickles, deceased, and the petitioner herein, filed a petition in said Probate Court to be appointed general administrator of his son's estate, which petition was promptly granted by the regular Probate Judge. On the same day, on petition of the general administrator, the Court also revoked the letters previously issued to the special administrator. On the same day the general administrator filed a suit in the Crawford County Circuit Court against Stein for the death of his son.

Thereafter, on September 18, 1952, the general administrator, by special appearance, filed a motion in the Circuit Court to quash the summons and service thereof on the special administrator in the said damage suit, on the ground that the appointment of the special administrator had been discharged in the manner above stated, and the Circuit Court therefore had no jurisdiction to try the case because there was no service on any proper party.

The Circuit Court overruled the motion, stating that the Probate Court had jurisdiction of the subject matter and the parties to make the special appointment for the purpose of receiving summons, that the appointment was cancelled by the later probate order, but that said cancellation did not affect the validity of the service which was had previously. Thereupon the petitioner filed in this Court a writ to prohibit further proceedings in the trial court.

The question here involved presents itself to this Court in the following form: Did the probate order of September 12th have the effect of voiding the original appointment *ab initio* as of August 29th or as of the date the last order was made on September 12th? Likewise, the answer to the above question depends, we think, on the answer to another question: Did the Probate Court have jurisdiction to make the first appointment? It is our opinion that the last question must be answered in the affirmative and that therefore it must follow that the revocation of the special letters of administration was effective as of September 12th and not as of August 29th.

The section of our Probate Code [62-2210 *Ark. Stats. Supp.*] providing for the appointment of a special administrator is here set out:

"*Special Administrators.*—For good cause shown a special administrator may be appointed pending the appointment of an executor or a general administrator or after the appointment of an executor or a general administrator, with or without the removal of the executor or general administrator. A special administrator may be appointed without notice or upon such notice as the court may direct. The appointment may be for a specified time, to perform duties respecting specific property, or to perform particular acts, as stated in the order of appointment. The special administrator shall make such reports as the court shall direct, and shall account to the court upon the termination of his authority . . ."

It is perfectly clear, we think, from the above statute that the Probate Court had jurisdiction to appoint a special administrator on August 29th, even before the expiration of the thirty days' period in which the near of kin had a preference to be appointed general administrator. It is ably argued that the above section never contemplated the appointment of a special administrator solely for the purpose of service in order to fix venue in a damage suit. We agree with this contention and think the regular chancellor was correct when he made the cancellation order on September 12th. Since both orders were apparently made at the same term of court, the Probate Judge had a right to revoke the first order for cause or on his own initiative.

Conceding, however, that the sole and obvious purpose of having a special administrator appointed on August 29th was to fix venue in the damage suit and that the Special Probate Judge should not have made the appointment for that purpose at that time, it does not force the conclusion that there was a total lack of jurisdiction, either of the subject matter or the party. Many situations can be envisioned where it would be proper and well within the spirit of the statute for the court to appoint a special administrator within the thirty days' preferential period mentioned above—for example, to preserve perishable property or to protect a right which was about to be cut off by the lapse of time.

Since we hold the court had jurisdiction of the subject matter and the party to make the said appointment on August 29th, it follows from principles fully supported by authority that the special appointment, being voidable and not void, was revoked as of September 12th, and that the service on the Special Administrator on August 30th was and is good.

In support of the above see: *Bivin* v. *Millsap*, 228 Ala. 136, 189 So. 770; *Commonwealth to Use of Colonial Trust Co. of Reading, et al.* v. *Gregory, et al.*, 261 Pa. 106, 104 Atl. 562; *Buckner's Adm'rs* v. *Louisville & N. R. Co.*, 120 Ky. 600, 87 S. W. 777; and *McFarland's Adm'r* v. *Louisville & N. R. Co.*, 130 Ky. 172, 113 S. W. 82.

The distinction between void and voidable orders, in this connection, is clearly stated in a note in 180 Ala. 159, 60 So. 277, 43 L. R. A., N. S., at page 634, as follows:

"As is pointed out in the earlier note, questions as to the validity of the acts of executors and administrators arise in two classes of cases, those in which the appointment was for some reason absolutely void, in which case the acts of the administrator or executor are a nullity, forming one class, and cases wherein the appointment was merely voidable, in which case acts done in good faith prior to the revocation of, and pursuant to the power granted, by the letters, have in general been considered valid and binding upon the estate, forming the second class."

In *Robertson's Succession,* 49 La. Ann. 80, 21 So. 197, it was held that unless the appointment of an executor is absolutely null and void, acts done by him in such capacity are legal and binding, it being said that mere irregularity of the appointment of an executor will not vitiate acts done under it.

In *Buckner* v. *Louisville & N. R. Co.,* 120 Ky. 600, 87 S. W. 777, where the appointment of administrator was merely erroneous, and not void, it was held that, up to the time of the termination of his office, he had all the authority that would have been possessed by an administrator rightfully appointed, and that consequently he could bind the decedent's estate, and could bind the estate in any manner in which a legally appointed guardian could bind it.

The above announced principle of law has also been recognized by this Court in the case of *McDonald* v. *Fort Smith & Western Railroad Company,* 105 Ark. 5, 150 S. W. 135. In this case the Court, discussing void and voidable judgments said:

"When a judgment is not a mere nullity, but only contains some defect which may become fatal and render it invalid, then it is only voidable, and, until it is actually annulled, it has all the force and effect of a perfectly valid judgment. Until by a proper proceeding such judg-

ment is reversed or vacated, it will be effective as an estoppel or as a source of title. A judgment rendered by a court without jurisdiction is void; and to have such jurisdiction the court must have jurisdiction both over the subject-matter of the suit and the parties thereto.''

The above decision has been cited with approval many times, though not on the exact point here involved, and has never been overruled.

Section 72 of the Probate Code [§ 62-2203 *Ark. Stats. Supp.*] if not conclusive is persuasive of the position we take that the August 29th order was effective until revoked on September 12th. The last sentence in this section reads: ''The removal of a personal representative after letters have been duly issued to him does not invalidate his official acts performed prior to removal.''

The Probate Code [§ 62-2003 s. *Ark. Stats. Supp.*] defines ''personal representative'' to mean ''administrator,'' and we think it includes a ''special'' administrator as well as a ''general'' administrator.

*Cases relied on by petitioner.* Petitioner, to support his contention in opposition to the conclusion above reached, cites several decisions of our Court and quotes language from two of them which might seem to substantiate his position. We think, however, an analysis of these cases shows they do not support petitioner's view.

In *Underwood* v. *Sledge*, 27 Ark. 295, the writer of the opinion was commenting on the fact that the county court had revoked an order made two days before [during the same term] and used certain language which we set out below exactly as quoted in petitioner's brief:

''. . . when such revision is had, the action of the court and the record stands precisely as if no such former mistake or erroneous judgment had ever been given or entered . . . and when an order or judgment of a court is set aside, at the same term of the court at which it was rendered, the whole suit or matter stands precisely as

if no such consideration had been had or entered of record, and all parties interested are remitted back to such rights and remedies as they had before the making of the orders or judgments so vacated.''

In this case the county court passed an order to appoint a county attorney and the members of the court, of whom *Sledge* was one, elected him to the said office with a salary of $1,500 a year. Two days later the same court revoked the first order, using this language: ''. . . the same is rescinded, and for naught held as though no action had been taken therein.'' The trial court held *Sledge* was entitled to the office and salary. This court reversed the trial court, as we understand, on the grounds that (1) the county court had a right to revoke the first order made at the same term, and (2) *Sledge* had no vested right in the office but only such right as the revoked order gave him. The language of this court quoted above was applicable to the situation under consideration and it should be so construed and limited.

The other case cited and quoted in full by petitioner is *State* v. *Doss,* 70 Ark. 312, 67 S. W. 867, which cites the *Sledge* case, *supra.* Here again the opinion must be read in connection with the facts, which were as follows: In 1899 the White County Court made an order prohibiting the sale of liquor within three miles of a certain church; on January 9, 1901, the same Court entered an order revoking the first order; and on the same day a license was issued to Doss permitting him to sell liquor for the year 1901 within the prohibited territory; on March 18, 1901, a petition was filed in said Court [same term] alleging a fraud had been practiced on the Court when the January 9, 1901, order was made, and the Court revoked the last-mentioned order; and Doss was tried for selling liquor on July 5, 1901. The Court, in holding Doss was not protected by the license issued to him, held: (1) The County Court had a right on March 18th to revoke the order previously made on January 9th because both were made at the same term; (2) When the January 9th order was revoked it left the 1899 order in full force; and (3) the license granted under the revoked or-

der never had any validity and there was no foundation in fact for such license. It must be conceded that the language in this opinion lends support to petitioner's contention here, but we think it must be distinguished or overruled. We, of course, don't know what view the Court might have taken if Doss had been charged with selling liquor before the January 9th order was revoked, but it might be supposed that a different result would have been reached and different language used. Also, the Court may have taken the view that the January 9th order, being secured through fraud on the Court, was void and not merely voidable. Under this view the case harmonizes with the rule we approve; otherwise, the language used [but not the result reached] cannot be justified by later decisions of this and other courts as set out above.

*Sufficiency of Service.* Petitioner makes another contention in support of the requested writ. In the Circuit Court he moved to quash service on the Special Administrator on the ground that the return simply showed service on "Lawson." The trial court overruled petitioner's motion to quash, and, we think, properly. The summons designated "Lawson Cloninger, Special Administrator of the estate of Will Roy Nickles, deceased." Cloninger was present in court and was on the witness stand when the return was introduced. No contention is made regarding his identity or that he was not actually served. The deputy sheriff who made the return was likewise in court as a witness and he stated that he served the summons [with the party properly designated] on and delivered a copy to Lawson Cloninger. Under the above circumstances it was a question of fact for the court to determine whether service was had on the proper person and in the proper manner, and we cannot say the trial court committed error in this instance.

We have carefully considered some other contentions made by petitioner, but in none of them do we find any error by the trial court.

638

The respondent argues that the writ of prohibition is not the proper remedy here. We have decided the case on its merits but it is our opinion, since a jurisdictional question was raised, that the remedy employed is not improper under the holding in *Gainsburg* v. *Dodge, Chancellor,* 193 Ark. 473, 101 S. W. 2d 178.

The writ is denied.

*Justice McFaddin,* concurs.